FILED
03 MAR 24 PM 4:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 2 5 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM C. REEVES, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. CV-01-S-1634-NE |
| ) | |
| THOMAS E. WHITE, SECRETARY, ) | |
| UNITED STATES ARMY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff, William C. Reeves, Jr., claims that his employer, the United States Army, unlawfully discriminated against him because of his race (African American) by failing to promote him, and, retaliating against him due to his support of another "minority employee."[1] The action presently is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment (doc. no. 2). Upon review of the pleadings, briefs, and defendant's evidentiary submissions, the court concludes that the alternative aspect of defendant's motion is due to be granted.

Defendant, Thomas E. White, Secretary of the United States Army, submitted evidence in support of the subject motion. If matters outside the pleadings are presented to and considered by the court when ruling upon a Rule 12(b)(6) motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Federal Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b); *see also, e.g., Wade v. Secretary of the Army*, 796 F.2d 1369, 1376 n.8 (11th Cir. 1986) ("As the decisions from these cases depended on fact-finding from materials outside the pleadings,

---

[1] Doc. no. 1 (Complaint) ¶ 47, at 9.

they should have been summary judgments.") (citing cases with facts similar to the present action); *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985) (holding that district court "has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion," but that once the court decides to do so, "it must convert the motion to dismiss into one for summary judgment") (citations omitted). This allows the court's inquiry to be fact specific and allows the nonmovant to demonstrate the existence of any genuine issues of material fact. Accordingly, this court treats defendant's motion as one for summary judgment pursuant to Rule 56. Further, the court provided both parties an opportunity to submit evidence and briefs in support of, or opposition to, the motion.[2]

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but that it also "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A

---

[2] *See* doc. no. 3 (submission order entered Sept. 5, 2001).

genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## I. FACTUAL BACKGROUND

Plaintiff, William C. Reeves, Jr., is employed by the United States Department of the Army Space and Missile Command at Redstone Arsenal, located near Huntsville, Alabama. During all periods relevant to the issues presented, plaintiff was Director of the Weapons Directorate of the Space and Missile Defense Technology Center ("Tech Center").[3] Plaintiff occupies a federal civil service position classified in the Senior Executive Service ("SES").[4] Plaintiff reported to Dr.

---

[3] *See* doc. no. 1 (Complaint) ¶ 13, at 2.

[4] *Id.* ¶ 3. A "Senior Executive Service" position is defined as

any position in an agency which is classified above GS-15 pursuant to section 5108 or in level IV or V of the Executive Schedule, or an equivalent position, which is not required to be filled by an appointment by the President by and with the advice and consent of the Senate, and in which an employee —

    (A)    directs the work of an organizational unit;

    (B)    is held accountable for the success of one or more specific programs or projects;

    (C)    monitors progress toward organizational goals and periodically evaluates and makes appropriate adjustments to such goals;

    (D)    supervises the work of employees other than personal assistants; or

    (E)    otherwise exercises important policy-making, policy-determining, or other executive functions;

but does not include —

Richard Fisher, Executive Director of the Tech Center. The events about which plaintiff complains began in December of 1998, following Dr. Fisher's retirement from federal service.[5]

Pending the selection of some person to fill Dr. Fisher's vacant position on a permanent basis, Brigadier General Steven Flohr, Deputy Commander of the Space and Missile Command, designated plaintiff and two other SES employees of the Tech Center (Jess Granone and Dr. Michael Lavan) to serve as "Acting Executive Director" on a three-month, rotational basis: *i.e.*, Granone served from January 1st through March 31, 1999; plaintiff was to serve from April 1st through June 30, 1999; and Dr. Lavan was to serve from July 1st through September 30, 1999.[6]

During his rotation as Acting Director, Granone realigned certain programs within the Tech Center. Specifically, on March 15, 1999, he announced his decision to transfer management responsibility for the Discoverer II and Kinetic Energy Anti-Satellite ("KE-ASAT") programs to the Space Technology Directorate, effective March 22, 1999.[7] Until that time, plaintiff had been responsible for management of those programs.

Lieutenant General John Costello, Commander of the Space and Missile Defense Command, appointed a recommending panel on March 18, 1999, to evaluate candidates for the vacant Executive Director position. The members of the panel were Brigadier General Flohr, Dr. Darrell Collier, Chief Scientist of the Space and Missile Defense Command, and Dr. A. Michael Andrews, Deputy

---

(i)   any position in the Foreign Service of the United States; or

(ii)  an administrative law judge position under section 3105 of this title.

5 U.S.C. § 3132(a).

[5]Doc. no. 4 (Submission of Evidence in Support of Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment), ex. 1.

[6]*Id.* Because Granone ultimately was selected as Executive Director on May 21, 1999, plaintiff did not complete his rotation, nor did Dr. Lavan serve as Acting Director.

[7]*Id.*, ex. 4.

Assistant Secretary for Research and Technology/Chief Scientist, Office of Assistant Secretary of the Army for Acquisition, Logistics & Technology. The panel interviewed four candidates during April of 1999, including Granone and plaintiff, and recommended that Granone be selected for the position. Lieutenant General Costello concurred with the recommendation, and forwarded it to the Chief of the Senior Executive Service Office, Assistant Secretary of the Army (Manpower and Reserve Affairs).[8] Granone's selection was formally announced on May 21, 1999.[9]

During August of 1999, an Army Regulation ("AR") 15-6 investigation was initiated against Steve Tiwari, an employee under plaintiff's supervision, by the Army's Criminal Investigation Division. Tiwari held the position of Exoatmospheric Interceptor Division Chief, and was responsible for the KE-ASAT program. The exact basis for the investigation is unclear from the record. The documentary evidence suggests that it was based on possible violations of the joint travel regulations.[10] In his complaint, however, plaintiff states that the AR 15-6 investigation was based on allegations of sexual harassment by Tiwari.[11]

The investigation was conducted by Colonel Robert Belton.[12] Following completion of the investigation, Granone assigned plaintiff, by memorandum dated October 27, 1999, to review the investigative report and provide recommendations as to an appropriate resolution.[13] Plaintiff submitted his report to Granone on December 30, 1999, and updated the report on January 3, 2000. He received a memorandum from Granone on January 7, 2000, directing him to address more

---

[8] *Id.*, ex. 3.

[9] *Id.*, ex. 6.

[10] *Id.*, ex. 5, at 11-12.

[11] Doc. no. 1 (Complaint) ¶ 34, at 6.

[12] Doc. no. 4 (Submission of Evidence in Support of Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment), ex. 6, at 4.

[13] *Id.* at 5.

thoroughly the allegations detailed in the October 27, 1999 memorandum.[14] On January 13, 2000, Granone directed plaintiff to submit a final report no later than January 20, 2000, but plaintiff did not do so until February 15, 2000.[15] Apparently, Granone was dissatisfied with plaintiff's report, and on April 14, he informed plaintiff that he would resolve the AR 15-6 investigation himself.[16] On May 2, 2000, Granone issued a proposal to suspend William Dobbs, Tiwari's immediate supervisor, for ten days because of flaws in Dobbs's procedure for authorizing and approving travel.[17] No disciplinary action was taken against Tiwari as a result of the investigation.[18]

During the course of the AR 15-6 investigation, on November 29, 1999, Granone finalized the realignment of the KE-ASAT program to the Space Technology directorate, and assigned Lieutenant Colonel Michael Cantor as program manager. Tiwari was relieved of responsibility for the program, and was directed not to have any contact with KE-ASAT contractors and subcontractors, or their officers and employees. Granone based this action on his "desire to strengthen [the] organizational alignments by placing all space control related programs and projects under a single division within the Space and Missile Defense Technical Center."[19] He further justified his decision as follows:

> [O]ngoing reviews suggest that your [Tiwari's] contacts with contractors and subcontractors may have ignored established procedures and the authority of the contracting officer and the contracting officer's technical representative; and that with your knowledge and participation, a contractor and subcontractor on this program may have charged the Government for lobbying activities which are not

---

[14] *Id.* at 6.

[15] *Id.*

[16] *Id.*

[17] Doc. no. 4 (Submission of Evidence in Support of Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment), ex. 5, at 16.

[18] *Id.* at 13.

[19] *Id.*, ex. 4.

allowable costs under FAR [Federal Acquisition Regulation] 31.205.22. [20]

During December of 1999, another of plaintiff's subordinates, Michael Cantrell, was reassigned by Granone to a year-long project. Plaintiff was not consulted in advance of this assignment.[21]

During January of 2000, Granone established a new office, consolidating the Tech Center's Directed Energy Technology programs.[22] This consolidation affected two programs for which plaintiff previously had been responsible — the joint U.S. and Israel Tactical High Energy Laser and the Solid State Laser programs. The consolidation resulted in a reduction in funding and personnel for plaintiff's directorate.[23]

The Ballistic Missile Defense Organization was restructured during February and March of 2000, and two centers — the Army Center for Space and Missile Defense Technology Development, and, the Joint Center for Technology Integration — were created, both under Granone's supervision.[24] According to plaintiff's complaint, plaintiff, Dr. Lavan, and Chuck Holpp, an Army personnel manager, met with Granone on March 23, 2000, to discuss Lavan's and plaintiff's interest in directing one of the newly created centers.[25] Granone intended for each center to be directed by a member of the SES, but was not sure that one of the positions could be justified at that level. Granone selected Dr. Lavan to head the Army Center for Space and Missile Defense Technology

---

[20] Doc. no. 4 (Submission of Evidence in Support of Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment), ex. 4.

[21] *Id.*, ex. 5, at 11.

[22] *Id.* at 12.

[23] *Id.*

[24] *Id.*, ex. 9.

[25] Doc. no. 1 (Complaint) ¶ 24, at 4.

Developments, and Michael Cantrell as director of the Joint Center for Technology Integration.[26]

Plaintiff was temporarily assigned to the position of Director of the Office of Technical Integration and Interoperability in June of 2000.[27]

Plaintiff initiated contact with an EEO counselor on May 3, 2000. The counselor was unable to resolve the complaint informally and, on August 24, 2000, plaintiff filed a formal complaint of discrimination with the Equal Employment Opportunity Commission.[28] He commenced this action on June 29, 2001.

## II. DISCUSSION

Defendant contends that plaintiff has failed to exhaust administrative remedies as to his claims of racial discrimination, that some of his claims are time-barred, and that he cannot establish a prima facie case of retaliation. Defendant also asserts that plaintiff, as a federal employee, may not bring a claim under 42 U.S.C. § 1981.

### A.   Section 1981 claim

As defendant correctly notes, the Supreme Court has held that Title VII provides the exclusive remedy for federal employees who claim that they have been discriminated against on the basis of race or some other protected characteristic. *See Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S. Ct. 1961, 1969, 48 L. Ed. 2d 402 (1976) (42 U.S.C. § 2000e-16 "provides the exclusive judicial remedy for claims of discrimination in federal employment"); *see also Canino v. United States EEOC*, 707 F.2d 468 (11th Cir. 1983) (holding that *former* federal employees must

---

[26]Doc. no. 4 (Submission of Evidence in Support of Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment), ex. 9. It appears that Dr. Lavan was selected for the SES position, but that fact is not entirely clear from the record.

[27]*Id.*, ex. 10.

[28]*Id.*, ex. 6.

bring all employment discrimination claims under Title VII).[29]

Plaintiff contends, however, that he does not assert a claim under 42 U.S.C. § 1981, but rather seeks compensatory damages under 42 U.S.C. § 1981a(a)(1).[30] Paragraphs 48 and 49 of the complaint read as follows:

> 48. As a direct and proximate result of the acts of reprisal and retaliation by SMDC, plaintiff has suffered mental anguish.
>
> 49. Plaintiff seeks front and back pay, statutory damages for each and every single reprisal and/or retaliation and attorney's fees for the unlawful discrimination, retaliation and reprisal practiced against plaintiff by SMDC.

The court need not determine whether plaintiff's claim for compensatory damages was properly pled, however, in view of the disposition of defendant's motion for summary judgment discussed

---

[29] Private employment practices and federal employment practices are regulated in separate provisions of Title VII. The provisions differ slightly. Private employers must comply with 42 U.S.C. § 2000e-2(a), which makes it an unlawful employment practice to discriminate on the basis of "race, color, religion, sex, or national origin" in hiring decisions, in compensation, terms and conditions of employment, and in classifying employees in a way that would "adversely affect" their status as employees. Federal employers, on the other hand, must adhere to 42 U.S.C. § 2000e-16, which provides: "All personnel actions affecting employees . . . in executive agencies as defined in section 105 of Title 5 . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Despite the difference in language between the Title VII provisions governing private and federal employers, most circuits have held that Title VII places the same restrictions on federal agencies as it does on private employers, *see, e.g., Barnes v. Costle*, 561 F.2d 983, 988 (D.C. Cir.1977), and so district courts may construe the provision pertain to federal employment practices in terms of the provision pertaining to private employers. *See, e.g., Bundy v. Jackson*, 641 F.2d 934, 942 (D.C.Cir.1981). Courts therefore have applied the familiar *McDonnell Douglas* test in Title VII actions against federal employers, even though the Supreme Court formulated the test in a private sector discrimination case. *See, e.g., Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Holbrook v. Reno*, 196 F.3d 255, 259 (D.C. Cir.1999); *Parker v. Secretary, U.S. Dep't of Housing & Urban Dev.*, 891 F.2d 316, 320 (D.C. Cir.1989); *Mitchell v. Baldrige*, 759 F.2d 80, 84 (D.C. Cir.1985); *McKenna v. Weinberger*, 729 F.2d 783, 788 (D.C. Cir.1984); *Valentino v. United States Postal Serv.*, 674 F.2d 56, 63 (D.C. Cir.1982). The Supreme Court also has assumed the test's applicability to the federal government. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983).

[30] 42 U.S.C. § 1981a(a)(1) provides that:

> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e-2 or 2000e-3), and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

hereafter.

**B.     Plaintiff's Exhaustion of Administrative Remedies**

Plaintiff complains of the following: (1) he was not selected as the Director of the Tech Center during April of 1999;[31] (2) Colonel Pollard "routinely undermined" anti-discrimination policies and obstructed the promotion of qualified minority employees;[32] (3) plaintiff was not selected to direct one of the newly created centers within the Ballistic Missile Defense Organization during February or March of 2000;[33] (4) a Criminal Investigation Division investigation was initiated against him during the selection process for the Director of the Tech Center;[34] (5) several programs and staff were transferred from the Weapons Directorate, resulting in a reduction of plaintiff's responsibility;[35] (6) he was aware of a rumor that he had been described as a "terrible briefer";[36] and, (7) he was reassigned to be the Director of the Office of Technical Integration and Interoperability, an office with few employees and a small budget.[37]

Federal employees who seek to assert Title VII claims must *timely* exhaust the administrative remedies available to them before they may assert their claims in a lawsuit. 42 U.S.C. § 2000e-16(c); *Brown v. General Services Administration*, 425 U.S. at 832, 96 S. Ct. at 1967. The regulations governing pre-complaint administrative processing of a federal employee's claim of discrimination provide that:

(a)     Aggrieved persons who believe they have been discriminated against on the

---

[31] Doc. no. 1 (Complaint) ¶ 21.
[32] *Id.* ¶ 17.
[33] *Id.* ¶ 24.
[34] *Id.* ¶ 26.
[35] Doc. no. 1 (Complaint) ¶¶ 36, 38.
[36] *Id.* ¶ 40.
[37] *Id.* ¶ 41.

> basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.
>
> (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105 (2003). Claims that are not addressed through the informal process are subject to dismissal. *See* 29 C.F.R. § 1614.107(a)(2) (2003).

Defendant contends that some of plaintiff's claims are barred because plaintiff failed to initiate contact with an EEO counselor within the forty-five day period prescribed by regulations. Defendant further asserts that the remainder of plaintiff's claims are time-barred because they occurred more than forty-five days before plaintiff initiated contact with an EEO counselor. Plaintiff maintains that his claims are not untimely, because defendant's allegedly discriminatory acts constituted a "continuing violation."

Plaintiff initiated contact with an Army EEO counselor on May 3, 2000. The counselor characterized plaintiff's allegations of discrimination as follows:

> [Plaintiff] claims that based on his race (African American), color (Black) and in reprisal for his prior EEO activity (supported the EEO activity of a colleague in FY 2000), he was discriminated against when: 1) he was not selected for promotion to a higher management position (Executive Director of Space & Missile Defense

>Technical Center) on May 21, 1999; and, 2) his authority and responsibility were reduced. Mr. Reeves also alleges ongoing harassment.[38]

Specifically, during the informal EEO conciliation process, plaintiff complained that: he was not selected to be the Director of the Tech Center; Granone undermined plaintiff's authority by rejecting his recommendation in connection with the investigation of Steve Tiwari; Granone removed Tiwari as manager of the KE-ASAT program, and, transferred the program and staff from plaintiff's area of responsibility; Granone reassigned one of plaintiff's division chiefs without consulting him; Granone consolidated all of the Tech Center's Directed Energy Technology programs into a new office, including the joint U.S. and Israel Tactical High Energy Laser and the Solid State Laser programs, for which plaintiff had been responsible; and, "it has been rumored" that he is a "terrible briefer" and speaks with a "black dialect."[39]

In the formal charge of discrimination that plaintiff subsequently filed with the EEOC, he also complained that he was not selected to direct one of the newly created centers within the Ballistic Missile Defense Organization during February or March of 2000,[40] and that the Criminal Investigation Division had initiated an investigation of which he was the subject.[41]

The court concludes that because plaintiff failed to initiate contact with an EEO counselor as required by the regulations with respect to the two additional allegations raised in the formal complaint of discrimination filed with the EEOC, he failed to exhaust his administrative remedies as to those claims. Plaintiff also failed to exhaust his administrative remedies with respect to those claims raised for the first time in his judicial complaint: *i.e.*, that Colonel Pollard "routinely

---

[38]Doc. no. 4 (Submission of Evidence in Support of Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment), ex. 5, at 2.

[39]*Id.* at 5-12.

[40]*Id.*, ex. 6, at 4.

[41]*Id.*

undermined" anti-discrimination policies and obstructed the promotion of qualified minority employees; and that his transfer to serve as Director of the Office of Technical Integration and Interoperability was discriminatory. Accordingly, those claims are not properly before the court, and are due to be dismissed.

As noted previously, plaintiff initiated contact with an EEO counselor on May 3, 2000. Therefore, any alleged discriminatory act that occurred more than forty-five days prior to that date (*i.e.*, before March 20, 2000), is untimely, unless plaintiff can establish that the limitations period should be tolled. In that regard, plaintiff argues that all of defendant's actions constitute a "continuing violation," such that consideration of any apparently untimely claims is warranted.

The Supreme Court recently addressed the viability of the "continuing violation" theory. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). The Eleventh Circuit elucidated the Court's decision in *National Railroad Passenger Corp.* in *Shields v. Fort James Corporation*, 305 F.3d 1280 (11th Cir. 2002), saying:

> The Court issued a twofold ruling. First, it held that "discrete discriminatory acts [such as termination, failure to promote, denial of transfer, or refusal to hire] are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp.*, 122 S.Ct. at 2072. Second, . . . the Court held that a hostile work environment claim should be reviewed in its entirety, so long as one of the events comprising it fell within the statute of limitations. Specifically, the Court emphasized:
>
>> A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawfully employment practice." 42 U.S.C. § 2000e-5(e)(1). . . . It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.
>
> In making this ruling, the Court essentially rejected the "continuing violation

doctrine" and simplified the law by allowing courts to view allegations of hostile work environment as "a single unlawful employment practice." Put simply, if the smallest portion of that "practice" occurred within the limitations time period, then the court should consider it as a whole.

*Id.* at 1281-82 (bracketed alteration in original) (quoting *National Railroad Passenger Corp.*, 536 U.S. at ___, 122 S. Ct. at 2074-75).

Here, plaintiff's complaint does not allege that he was subjected to a hostile work environment. Rather, plaintiff alleges that defendant "has engaged in a continuing practice of racial discrimination concerning the *selection, promotion,* and *job assignments* of the plaintiff, William C. Reeves, Jr."[42] If any of those acts occurred prior to March 20, 2000, they are time barred.

The selection of Jess Granone, rather than plaintiff, as Executive Director of the Tech Center was formally announced on May 21, 1999. Accordingly, plaintiff's claim of discrimination based on his failure to be selected for that position is beyond the limitations period. The realignment of the Discoverer II and Kinetic Energy Anti-Satellite programs from the Weapons Directorate to the Space Technology Directorate was effective March 22, 1999, and the consolidation of the Directed Energy Technology programs occurred on January 4, 2000. Michael Cantrell, plaintiff's subordinate, was reassigned during December of 1999. All of those actions likewise are beyond the limitations period.

Although plaintiff does not state with specificity the date on which he learned that "someone in [his] management chain" referred to him as a "lousy briefer," his formal complaint of discrimination filed with the EEOC states that this event occurred during Granone's three-month rotation as Acting Executive Director of the Tech Center. Granone served in an acting capacity from

---

[42] Doc. no. 1 (Complaint) ¶ 44, at 9 (emphasis supplied).

January 1st through March 31, 1999;[43] accordingly, this claim also is untimely.

### C.     Plaintiff's Retaliation Claim

"Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter [of Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [of Title VII].

42 U.S.C. § 2000e-3(a). Congress thus recognized two bases for a claim of retaliation: one for *opposition* to discriminatory practices, and another for *participation* in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by this subchapter.' . . . And, under the participation clause, an employer may not retaliate against an employee because the employee 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.' . . ."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

Generally speaking, a prima facie case for retaliation has three elements. A plaintiff must prove that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal linkage between the protected activity and the adverse employment action. *See, e.g., Bass v. Board of County Commissioners*, 256 F.3d 1095, 1117 (11th Cir. 2001);

---

[43]Doc. no. 4 (Submission of Evidence in Support of Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment), ex. 1.

*Gupta*, 212 F.3d at 587; *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

Plaintiff bases his claim of retaliation *solely* on his "support" for Steve Tiwari, a "minority employee,"[44] and *not* on the fact that he filed a complaint of discrimination with the EEOC. Specifically, plaintiff contends that because he did not recommend disciplinary action against Tiwari following the AR 15-6 investigation, defendant retaliated against plaintiff by reducing his responsibilities, reassigning his staff, and transferring him to direct the Office of Technical Integration and Interoperability. This allegation ignores the fact that no disciplinary action was taken against Tiwari as a result of the investigation.[45]

Plaintiff has offered no evidence to support his claim that he suffered retaliation for opposing an allegedly unlawful employment practice of defendant. While plaintiff claims that he was retaliated against for his "support" of a "minority employee" (Tiwari), there is no evidence that plaintiff complained that the investigation of Tiwari was motivated by Tiwari's race, national origin, or other protected characteristic. As such, plaintiff has not established that he engaged in statutorily protected activity, and his retaliation claim must fail.

### III. CONCLUSION

For all of the foregoing reasons, plaintiff's claims are due to be dismissed. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

---

[44] Doc. no. 1 (Complaint) ¶ 47, at 9.
[45] See text accompanying note 18 *supra*.

DONE this __24th__ day of March, 2003.

_____
United States District Judge